## Commonwealth of Massachusetts

MIDDLESEX,SS.

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO. 2018-1848
(1881C V01848)

_Ted Williams_ , PLAINTIFF(S),

v.

_Cognizant Technology_ , DEFENDANT(S)
_Solutions_

### SUMMONS

THIS SUMMONS IS DIRECTED TO _Cognizant Technology Solutions_. (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the
Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been
filed in the _Middlesex Superior_ Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1.  **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide
    the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the
    opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect
    to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an
    extension of time in writing from the Court.**

2.  **How to Respond.** To respond to this lawsuit, you must file a written response with the court **and** mail a
    copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:
    a.  Filing your **signed original** response with the Clerk's Office for Civil Business, _Middlesex_ Court, 200 _Trade Center_
        _Woburn, MA 01801_ (address), by mail or in person, **AND**          _Superior_
    b.  Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following
        address: _Michael Rabieh, 26 Brighton St, Suite 204, Belmont MA 02478_

3.  **What to include in your response.** An "Answer" is one type of response to a Complaint. Your Answer
    must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint.
    Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to
    use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are
    based on the same facts or transaction described in the Complaint, then you must include those claims
    in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this
    lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your
    Answer or in a written demand for a jury trial that you must send to the other side and file with the
    court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a
    **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion
    to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12.** If
    you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions"
    described in the rules of the Court in which the complaint was filed, available at
    www.mass.gov/courts/case-legal-res/rules of court.

4.   **Legal Assistance.** You may wish to get legal help from a lawyer.  If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5.   **Required information on all filings:** The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant, Chief Justice on __July 17__, 20_18_.

_____

Michael A. Sullivan
Clerk-Magistrate

Note:  The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

## PROOF OF SERVICE OF PROCESS

        I hereby certify that on_____, 20___, I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the following manner (See Mass. R. Civ. P. 4(d)(1-5)):

_____

_____

_____

Dated:_____, 20_____        Signature:_____

**N.B.      TO PROCESS SERVER:**

        PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX - BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.

                                                                    , 20___

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.                          SUPERIOR COURT DEPARTMENT
                                        OF THE TRIAL COURT

|  |  |
|---|---|
| TED WILLIAMS,                ) | |
|          Plaintiff,          ) | |
|                              ) | |
| v.                           ) | CIVIL ACTION NO. _____ |
| COGNIZANT TECHNOLOGY         ) | |
|     SOLUTIONS,               ) | |
|          Defendant           ) | |

## COMPLAINT and JURY TRIAL DEMAND

### Parties and Jurisdiction

1.      Plaintiff Ted Williams ("Williams") is an individual residing at 129 Chine Way, Osterville, MA 02655.

2.      Defendant Cognizant Technology Solutions ("Cognizant") is a corporation organized under the laws of Delaware with a headquarters at 500 Frank W Burr Blvd., Teaneck, NJ 07666 and a usual place of business in Massachusetts at 125 Jeffrey Avenue, Holliston, MA 01746.

3.      Jurisdiction and venue lie in this Court pursuant to G.L. c. 212, §§ 3 and 4 and G.L. c. 223, § 1.

### Facts

4.      Cognizant is a Fortune 500 company that provides digital, technology, consulting and operations services to its clients, which include IBM.

5.      In the spring of 2016, Cognizant solicited Williams, who at the time was a long-standing employee of IBM, to join Cognizant as a sales and marketing executive whose focus

would be managing Cognizant's business relationship with IBM, which had previously been virtually unmanaged.

6. After interviewing with Cognizant, Williams accepted and started a position as Senior Director, Global IBM Alliance Manager on or about May 31, 2016.

7. Williams performed well in his new job and generally received positive feedback. While he received mild criticism as he adjusted to his new position and to newly implemented corporate processes, he never received any warning, verbal or otherwise, concerning his job performance, nor was he given any job counseling or put on a performance improvement plan.

8. In January 2017, Williams began experiencing health issues, including depression, anxiety and diffiulty sleeping.

9. Cognizant had policies in place allowing employees to take leaves of absence to address serious health conditions.

10. On Feburary 8, 2017, Williams sent Brahms an email asking her for assistance in submitting a request for a leave of absence.

11. Brahms responded by email the same day that she had forwarded Williams's email to Cognizant's benefits team and that this team would advise him as to the procedures he needed to follow.

12. The benefits team advised Williams by email later the same day that, if he was to "be out of work for at least four (4) consecutive business days," he was eligible "to apply for a leave of absence" and for "disability benefits through MetLife" for two thirds of his pay "up to a weekly maximum of $2,000." The benefits team also sent him, as an attachment, a Leave of Absence (LOA) Request Form ("LOA Form") to fill out and submit.

13.     Also on February 8, Williams conducted a critical telephone conference call for IBM representatives in which he, having taken the lead in preparing the IBM-Cognizant business plan, took the lead in presenting the plan.  The presentation was well received by IBM. Williams's supervisor, Steven Simmons ("Simmons"), Associate Vice President in Cognizant's Strategic Partnership Group, was also on this call but offered only minimal contributions and deferred to Williams's leadership on the call.

14.     The next day (February 9, 2017), Williams submitted the completed LOA Form by email to the benefits department.

15.     The same morning, Williams sent Simmons an email stating that he was "processing a LOA via" the benefits department and that he planned to be "ouf of the office" February 10 through March 15.  Williams noted that the two could discuss the matter on a 5:00 p.m. telephone conference call that had been previously scheduled to discuss business matters.

16.     Simmons replied by email at 1:42 p.m. that he appreciated Williams's notice and inquired into whether Williams planned to attend a conference called "Partner World" the following week.

17.     Williams replied by email at 4:10 p.m. that he would not be attending the conference but reassured Simmons that he had brought colleagues up to speed on the work he had been performing with IBM, so "they can slide into these plans" during his leave of absence.

18.     When Williams dialed into the 5:00 p.m. telephone conference call, he was surprised to find that Brahms had joined him and Simmons on the call.

19.     There was no discussion of business matters or of Williams's leave of absence during this telephone conference.

20.     Instead, Williams was abruptly informed that he was being fired, effective February 10, 2017, due to a "management change."  No performance-based reasons were given as purported justification for the termination.

21.     At the time of his termination, Williams was sixty-eight (68) years old.

22.     The next day (February 10), Williams emailed Brahms to request an "informal call" to discuss "the background of his termination."

23.     Brahms never replied, and no one from Cognizant ever agreed to meet with Williams to discuss his termination despite repeated requests.

24.     On February 10, Williams requested in writing a copy of his personnel file.

25.     Notwithstanding the requirement of G.L. c. 149, § 52C, that employers must provide employees with their personnel records within five business days of a written request, Cognizant did not comply with Williams's request for more than two weeks.

26.     On April 18, 2017, Williams filed a charge of discrimination (the "Charge") with the Massachusetts Commission Against Discrimination (MCAD) alleging discrimination on the basis of age and disability as well as a retaliatory discharge.

27.     The Charge was docketed as MCAD Docket No. 17BEM01051 and as EEOC Charge No. 16C-2017-01326.

28.     In its response to the Charge (the "Response"), Cognizant alleged that it discharged Williams for performance-based reasons and that it had been considering terminating him prior to his request for a leave of absence.

29.     This was the first time Cognizant communicated to Williams that it had purportedly terminated him because of "inadequate" work performance as opposed to the reason initially given to him ("management change").

30.     An email attached to Cognizant's Response from Joshua Soldati, Vice President & Global Head of Strategic Partnerships ("Soldati"), and dated January 24, 2017, expressed Soldati's opinion that Williams was a "poor cultural fit" with Cognizant and should be terminated.

31.     Williams was significantly older than nearly all of his colleagues at Cognizant, including Soldati and Simmons.  On information and belief, his colleagues' average age was more than twenty years younger.

32.     Despite such opinions, Brahms (of Cognizant's human resources department) opposed Soldati.  According to Simmons in a January 24, 2017 email, Brahms insisted on "one more 'event/proof' [of] not adequate performance before we terminate."  In the email Simmons said he "expected" that a "planning session with insurance/AIM and IBM" on Friday, January 27 "will be the event we need."

33.     The January 27 event, however, was emphatically not an instance of "not adequate performance."  The session was well received by all attendees, and the Monday after the event (January 30), IBM North America Analytics Alliance Manager Thomas Conallis sent an email to Simmons praising Williams (and a colleague):

> "both Ted Williams and Narinder Ishar worked incredibly hard to pull together this insurance workshop that promises to deliver for both Cognizant and IBM Analytics.  Both of these individuals are working hard to make this partnership a success and their positive attitude is infectious."

34.     Subsequent communications from former senior colleagues at Cognizant following Williams's termination in February expressed surprise at his departure and praised the work he had performed during his tenure at the company.

35.     Cognizant hired a younger person to replace Williams following his termination.

36.     Following his abrupt termination in the immediate wake of request of a leave of absence, Williams experienced severe emotional distress, the phsyical symptoms of which included increased difficulty in sleeping.  He sought psychiatric treatment for his distress.

37.     Williams also suffered lost income as a result of his termination.

### Count I
### (Discrimination on the Basis of Handicap in Violation of Chapter 151B)

38.     Plaintiff incorporates Paragraphs 1-37 as if fully stated herein.

39.     Cognizant is an employer subject to Chapter 151B of the General Laws of Massachusetts ("Chapter 151B").

40.     Section 4 of Chapter 151B prohibits covered employers such as Cognizant from discriminating against a employee with a handicap, including a perceived handicap, who is qualified, with or without a reasonable accommodation, to perform the essential functions of his or her job.

41.     At the time of his termination, Williams was suffering from a handicap as defined at § 1(17) of Chapter 151B.

42.     Williams performed the essential functions of his job well during his employment at Cognizant, and he requested a reasonable accommodation in the form of a brief leave of absence in order to continue performing these functions.

43.     Cognizant did not grant the leave of absence or engage in an interactive process in an effort to reach a reasonable accommodation.

44.     Instead, the day after he formally requested a leave of absence, Cognizant terminated Williams's employment.

45.     Cognizant discriminated against Williams on the basis of his handicap, in violation of Chapter 151B.

6

46.     Cognizant knew or had reason to know it terminated Williams in violation of Chapter 151B.

47.     As a direct and proximate result of this discrimination, Williams has suffered and continues to suffer harm, including emotional distress, for which he is entitled to an award of damages.

## Count II
### (Discrimination on the Basis of Disability in Violation of the ADA)

48.     Plaintiff incorporates the allegations of Paragraphs 1-47 as if fully stated herein.

49.     Cognizant is an employer subject to the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq. (the "ADA").

50.     Section 12112 of the ADA prohibits covered employers such as Cognizant from discriminating against an employee suffering from a disability, including a perceived disability, who is qualified to perform the essential functions of the employment position he or she holds, with or without reasonable accommodation.

51.     At the time of his termination, Williams was suffering from a disability as defined at § 12102 of the ADA.

52.     Williams performed the essential functions of his employment position well during his employment at Cognizant, and he requested a reasonable accommodation in the form of a brief leave of absence in order to continue performing these functions.

53.     Cognizant did not grant the leave of absence or engage in an interactive process in an effort to reach a reasonable accommodation.

54.     Instead, the day after he formally requested a leave of absence, Cognizant terminated Williams's employment.

7

55.    Cognizant discriminated against Williams on the basis of his disability, in violation of the ADA.

56.    As a direct and proximate result of this discrimination, Williams has suffered and continues to suffer harm, including emotional distress, for which he is entitled to an award of damages.

### Count III
### (Retaliation in Violation of the ADA)

57.    Plaintiff incorporates the allegations of Paragraphs 1-56 as if fully stated herein.

58.    Section 12203 of the ADA prohibits covered employers such as Cognizant from retaliating against employees for engaging in protected conduct, including requesting a reasonable accommodation.

59.    Cognizant engaged in probited retaliatory conduct when it terminated Williams's employment just after, and in retaliation for, his request for a reasonable accommodation.

60.    As a direct and proximate result of this retaliation, Williams has suffered and continues to suffer harm, including emotional distress, for which he is entitled to an award of damages.

### Count IV
### (Discrimination on the Basis of Age in Violation of Chapter 151B)

61.    Plaintiff incorporates the allegations of Paragraphs 1-60 as if fully stated herein.

62.    Section 4 of Chapter 151B prohibits covered employers such as Cognizant from discriminating against employees who are 40 years old or older on the basis of their age.

63.    Williams was 68 years old when Cognizant terminated his employment.

64.    Williams was performing his job at an acceptable level throughout his employment, including at the time of his termination.

65.     Cognizant terminated his employment and filled his position with a younger individual.

66.     Williams's termination violated Chapter 151B.

67.     Williams's termination was motivated by age discrimination, reflected in part in statements alleging that he was a "poor cultural fit" with his significantly younger colleagues.

68.     As a direct and proximate result of this discrimination, Williams has suffered and continues to suffer harm, including emotional distress, for which he is entitled to an award of damages.

## Count V
## (Discrimination on the Basis of Age in Violation of the ADEA)

69.     Plaintiff incorporates the allegations of Paragraphs 1-68 as if fully stated herein.

70.     Cognizant is an employer subject to the Age Discrimination in Employment Act 29 U.S.C. §§ 621-634 (the "ADEA").

71.     Section 623 of the ADEA prohibits covered employers such as Cognizant from discriminating against employees who are 40 years old or older on the basis of their age whose work is sufficient to meet the employers' legitimate expectations.

72.     Williams's work was sufficient to meet Cognizant's legitimate expectations throughout his employment, including at the time of his termination.

73.     Cognizant terminated his employment and filled his position with a younger individual.

74.     Williams's termination was motivated by age discrimination, reflected in part in statements alleging that he was a "poor cultural fit" with his significantly younger colleagues.

75.     Williams's termination violated the ADEA.

76.     As a direct and proximate result of this discrimination, Williams has suffered and continues to suffer harm, including emotional distress, for which he is entitled to an award of damages.

WHEREFORE, Plaintiff Ted Williams requests that the Court:

1.     Enter judgment in his favor on all counts;

2.     Award him damages in an amount to be determined at trial;

3.     Award him multiple and punitive damages to the fullest extent permitted by law, including pursuant to G.L. c. 151B, § 9;

4.     Award him reasonable attorney's fees and costs to the fullest extent permitted by law, including pursuant to G.L. c. 151B, § 9; and

5.     Grant him such other relief as the Court deems just and appropriate.

**Plaintiff demands a jury trial as to all claims so triable.**


**TED WILLIAMS,**

By his attorney,


Michael S. Rabieh (BBO # 654737)
THE LAW OFFICE OF MICHAEL S. RABIEH
26 Brighton Street, Suite 204
Belmont, MA  02478
mrabieh@rabiehlaw.com
617.475.5273 (T)
617.684.1742 (F)

June 20, 2018

10

| CIVIL ACTION COVER SHEET | DOCKET NUMBER | | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|---|

PLAINTIFF(S):   Ted Williams

ADDRESS:   129 Chine Way, Osterville, MA 02655

COUNTY
Middlesex

DEFENDANT(S):   Cognizant Technology Solutions

ATTORNEY:   Michael S. Rabieh

ADDRESS:   26 Brighton Street, Suite 204, Belmont, MA  02478

ADDRESS:   125 Jeffrey Avenue, Holliston, MA 01746

BBO:   654737

## TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B22 | Employment Discrimination | F | [X] YES    [ ] NO |

*If "Other" please describe:

## STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff counsel relies to determine money damages.  For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(attach additional sheets as necessary)

A. Documented medical expenses to date:
  1. Total hospital expenses ...... $
  2. Total doctor expenses ...... $
  3. Total chiropractic expenses ...... $
  4. Total physical therapy expenses ...... $
  5. Total other expenses (describe below) ...... $
                                      Subtotal (A): $

B. Documented lost wages and compensation to date ...... $  250,000
C. Documented property damages to dated ...... $
D. Reasonably anticipated future medical and hospital expenses ...... $
E. Reasonably anticipated lost wages ...... $
F. Other documented items of damages (describe below) ...... $

G. Briefly describe plaintiff's injury, including the nature and extent of injury:
  Plaintiff suffered lost wages and emotional distress after defendant terminated his employment in violation of G.L. Chapter
  151B, the Americans with Disabilities Act, and the Age Discrimination in Employment Act

TOTAL (A-F):$  250,000

### CONTRACT CLAIMS
(attach additional sheets as necessary)

Provide a detailed description of claims(s):

TOTAL: $

Signature of Attorney/Pro Se Plaintiff: X _____   Date: 6/21/2018

RELATED ACTIONS: Please provide the case number, case name, and county of any related actions pending in the Superior Court.

None

## CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney of Record:  X _____     Date:  June 21, 2018

| CIVIL TRACKING ORDER<br>(STANDING ORDER 1- 88) | DOCKET NUMBER<br>1881CV01848 | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|

| CASE NAME:<br>Ted Williams vs. Cognizant Technology Solutions | Michael A. Sullivan, Clerk of Court<br>Middlesex County |
|---|---|

| TO:<br>Michael Rabieh, Esq.<br>The Law Office of Michael S. Rabieh<br>26 Brighton St<br>Suite 204<br>Belmont, MA 02478 | COURT NAME & ADDRESS<br>Middlesex County Superior Court - Woburn<br>200 Trade Center<br>Woburn, MA 01801 |
|---|---|

### TRACKING ORDER - F - Fast Track

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

### STAGES OF LITIGATION      DEADLINE

| | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | | 09/25/2018 | |
| Response to the complaint filed (also see MRCP 12) | | 10/25/2018 | |
| All motions under MRCP 12, 19, and 20 | 10/25/2018 | 11/26/2018 | 12/24/2018 |
| All motions under MRCP 15 | 10/25/2018 | 11/26/2018 | 12/24/2018 |
| All discovery requests **and depositions** served and non-expert despositions completed | 04/23/2019 | | |
| All motions under MRCP 56 | 05/23/2019 | 06/24/2019 | |
| Final pre-trial conference held and/or firm trial date set | | | 10/21/2019 |
| Case shall be resolved and judgment shall issue by | | | 06/26/2020 |

**The final pre-trial deadline is not the scheduled date of the conference.** You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to

| DATE ISSUED | ASSISTANT CLERK | PHONE |
|---|---|---|
| 06/27/2018 | Dia S Roberts-Tyler | (781)939-2772 |